IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 17-0208 |
| | ELECTRONICALLY FILED |
| Plaintiff, | |
| v. | |
| MAURICE FREZZELL, | |
| Defendant. | |

**Memorandum Order denying Motion for Compassionate Release (Doc. 184)**

## I.     Introduction

Currently pending before this Court is the Motion for Compassionate Release of Petitioner, Maurice Frezzell, pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 184) ("the First Step Act") with supplemental briefing. (Doc. 198, Doc. 203, Doc. 208, and Doc. 209).  The Government opposes Petitioner's instant Motion, on the basis that he failed to raise these arguments before the Warden at the Bureau of Prisons (BOP), and are otherwise without merit. (Doc. 205).  After careful consideration, Petitioner's Motion will be DENIED.

## II.    Background

On August 8, 2017, Petitioner was charged in a one-count Indictment with Distribution and Possession with Intent to Distribute a Quantity of a Mixture and Substance and Mixture Containing a Detectable Amount of Heroin, in violation of Title 21 United States Code Sections 841(a)(1) and (b)(1)(C).  (Doc. 3).  Then, on October 25, 2017, the Government filed an Information to establish a prior conviction for an enhanced penalty of up to 30 years

1

imprisonment, and in support, the Government relied upon three (3) prior felony drug offenses. (Doc. 37).

On December 4 through December 6, 2017, the jury trial of this matter occurred, and Defendant was convicted on the sole count of the Indictment. (Doc. 105). The evidence adduced at trial and as established during the sentencing proceedings reveals that, in 2015, Petitioner was identified as a high-ranking member of a drug organization operating in Washington County, Pennsylvania (Doc. 120 ¶ 8, 13). According to the investigation, several individuals who purchased drugs from dealers Petitioner supplied overdosed and there was one fatality. (Id.). In November 2015, a confidential source working under the direction of the DEA made arrangements to buy heroin from Petitioner and Petitioner sold the source 1.784 grams of heroin on November 19, 2015. (Id. at ¶ 9).

Petitioner was sentenced on June 12 and June 13, 2018, and after extensive testimony, the Court held that Petitioner's offense level was a 34 and his criminal history category was VI, resulting in a sentencing guideline range of 262 to 327 months' imprisonment (Doc. 138, Doc. 139). The Court, however, ruled against the Government's requested offense level of 36, and carefully considered the parties arguments and stated that the Government could not get the benefit of convicting Petitioner of other crimes (resulting in a higher advisory guideline range) without sustaining its burden on those crimes at a trial.

The Court also ruled Petitioner was a career offender, but he would have still been assigned a Criminal Category of VI, regardless of his career offender status.[1] The Court

---

[1] The Court notes that Petitioner has a significant criminal history dating back to 1995. Petitioner's first adult conviction was for unlawfully possessing a firearm in 2001 (Doc. 120 at ¶ 34). He received a sentence of six to eighteen months' imprisonment (Id.). Later that year, after fleeing from an officer who was trying to arrest him, Petitioner was convicted of disorderly conduct (Id. ¶ 34). He received a years' probation, but it was revoked and Petitioner spent almost

sentenced Petitioner to a 327-month term of imprisonment, followed by 6 years of supervised release. (Doc. 142). Petitioner unsuccessfully pursued a direct appeal challenging the veracity of an eyewitness before the United States Court of Appeals for the Third Circuit. *United States v. Frezzell,* 793 F. App'x 133 (3d Cir. 2019).

Afterwards, he filed a Motion to Vacate Sentence pursuant to Section 2255, on January 4, 2021 (Doc. 155, Doc. 159, and Doc. 160). Petitioner maintained, *inter alia*, that he was no longer a Career Offender under the Third Circuit's decision in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (Doc. 169 at 1). The Court denied the claim on its merits noting that Petitioner's state and federal convictions qualified as predicate felonies under the Career Offender guideline and reaffirmed its determination that he was a Career Offender (Id. at 8).

On October 18, 2021, Petitioner filed his Notice of Appeal before the Court of Appeals for the Third Circuit (Doc. 178). On August 27, 2021, Petitioner filed a Motion to Reduce

---

a year incarcerated (Id.). In November 2002, Petitioner threatened the mother of his child and was convicted of disorderly conduct and harassment (PSR ¶¶ 37-38). After fleeing from a traffic stop in January 2003, he was convicted of resisting arrest and placed on probation for a year (Id. at ¶ 39). His probation was later revoked and he was sentenced to nine to twenty-three months imprisonment (Id.). Six months later, he was convicted for defiant trespass (Id. at ¶ 40). On June 20, 2003, Petitioner was arrested on an outstanding warrant and placed in the Monessen Police Department lock-up (Id. at ¶ 41). He attempted to destroy 6.2 grams of crack hidden on his person but the police stopped him (Id.). He was convicted of possession with intent to deliver and received six to twenty-three months imprisonment (Id.). Another felony delivery conviction occurred on January 23, 2004, after Petitioner sold 1.6 grams of crack to an undercover officer (Id. at ¶ 42). He was sentenced to six to twenty-three months imprisonment. In 2004, Petitioner pleaded guilty to another charge of possession of cocaine base and received a sentence of six to eighteen months (Id. at ¶ 36). He was paroled but violated the terms of his release and was reincarcerated (Id.). On April 25, 2007, Petitioner sold 7.5 grams of crack to a confidential informant working for the Pennsylvania State Police (Id. at ¶ 46). This case was prosecuted in federal court. Petitioner pleaded guilty to violating 21 U.S.C. § 841(a)(1) and was sentenced to 100 months imprisonment and five years' supervised release (Id.). Supervised release commenced on February 27, 2015, and Petitioner violated its terms by committing the instant offense (Id.).

Sentence/for Compassionate Release under the First Step Act, which this Court denied because the matter was on appeal. On December 14, 2021, the Court of Appeals affirmed this Court's Order on the Motion to Vacate (Doc. 187).

This Court then appointed counsel to review and file any supplemental motions/briefs on Petitioner's Motion for Compassionate Release; however, on May 5, 2022, Petitioner's appointed counsel informed the Court that he would not be filing a Motion on Petitioner's behalf. (Doc. 197). The Court has considered Petitioner's Motion and numerous supplemental filings, as well as the Government's Response thereto. (Doc. 184, Doc. 198, Doc. 203, Doc. 205, Doc. 208 and Doc. 209).

### III.     Applicable Law

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

> The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason," for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

> 1. Extraordinary and Compelling Reasons. -- Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
> . . .
> (ii) The defendant is
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  Notably, the Court of Appeals for the Third Circuit recently held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'." *United States  v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

It is the Petitioner who bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a Petitioner may file a Section 3582(c)(1)(A) motion with the Court.  As explained by the Court of Appeals for the Third Circuit in *United States  v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 812 Fed. App'x. at 107.

The First Step Act's amendment of 18 U.S.C. § 3582 ("Section 3582") provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (2) in any case—
>
> (B) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>(i) extraordinary and compelling reasons warrant such a reduction; . . . and
>that such a reduction is consistent with applicable policy statements issued
>by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

In order to obtain judicial relief, inmates are required to exhaust administrative remedies. *United States v. Raia,* 954 F.3d 594, 595 (3d Cir. 2020) (noting that Petitioners "must at least ask the Bureau of Prisons (BOP) to [file a motion] on their behalf and give BOP thirty days to respond."). One of the chief reasons "for requiring prisoners to exhaust their administrative remedies is to give the BOP the opportunity to address the issue[s]." *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 4, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  To properly exhaust administrative remedies, "the administrative complainant must raise the same claims asserted in the federal court filing."  *Id.* (citing *Garda-Lord v. Doe*, 736 F. App'x 30, 32 (3d Cir. 2018) (prisoner failed to exhaust administrative remedies even though he filed numerous prison grievances because none addressed the subject of the federal complaint)).

Petitioner bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A)(i).  *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5747829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

### IV. Discussion

In Petitioner's *Pro Se* Motion for Compassionate Release and supplemental briefs, he advances various arguments, which he contends constitute compelling and extraordinary bases for relief, and otherwise warrant compassionate release.  Namely, he posits: that the Career Offender guideline is flawed; that others who were convicted for engaging in conduct resulting in death received sentences lower than his, constituting a "disparity"; that the "onerous"

7

conditions of his confinement warrant compassionate release; that the Government's prior alleged plea offer of 70 months imprisonment (which he allegedly declined) if he cooperated and 12 years imprisonment (if he did not) demonstrates that the sentence in this case is unfair; and finally, that a balance of the Section 3553(a) factors otherwise warrant relief.

The Government counters that Petitioner has failed to evidence that he exhausted his administrative remedies, and his Motion is also without merit. In his July 22, 2022, supplemental brief, Petitioner contends that he did, in fact, present all of the within claims before the Warden and attached as Exhibit A, a letter he allegedly sent to the Warden (Doc. 208).

### A. Failure to Exhaust Administrative Remedies

On June 10, 2021, Frezzell sent the following request to his Warden: "I submitted a (RIS) form to the inmate mailbox. [A]pparently since it is not addressed to anyone you are not receiving it. PLEASE consider this my formal request for (RIS). THANK YOU." (Govt. Exh. No. 1). On July 2, 2021, after noting that Frezzell had submitted a compassionate release request, but "did not select a category," the Warden denied the request.

Although Petitioner attaches an Exhibit to his recent filing (at Doc. 208-2) which is a letter to the Warden dated November 22, 2021 (well after the July 2, 2021, denial), he does not demonstrate that this letter was even received by the Warden, and all of Petitioner's arguments in the instant Motion are not contained in said letter, thus evidencing that the Warden did not consider the full panoply of his reasons for relief.

Petitioner's contention that he has exhausted his administrative remedies is therefore without sufficient proof because the letter is belated and several of the grounds raised in his Motion were not raised before the Warden (Doc. 184 at 4). This Court is mindful of the

underlying rationale of the exhaustion element having not been met where, as here, all of the arguments presented to this Court were not presented to the BOP.  Permitting inmates to bypass the exhaustion requirement "by presenting one reason for relief to the BOP and another to the Court would create an end-run around the exhaustion requirement and deprive the BOP the opportunity to consider the request." *United States v. McNair*, 481 F.Supp.3d 362, 368 (D.N.J. Aug. 2020). This issue is exacerbated here, because Petitioner appears to have cited no grounds in his institutional compassionate release request. He has not exhausted his administrative remedies and this Court lacks the authority to rule on the merits of the Motion.

### B. Merits Analysis

The Court has likewise considered the merits of Petitioner's arguments, and finds that there are no compelling or extraordinary reasons to reduce his sentence, after also considering the Section 3553(a) factors.

Specifically, Petitioner's contention that the Court was not able to consider whether the Career Offender Guidelines were flawed, or whether it had a policy disagreement with the Career Offender Guidelines, is misplaced.  This Court agrees with the Government that this argument constitutes a challenge to the validity of the sentence and may not be raised in the context of the current procedural posture of this case.  Moreover, Petitioner previously challenged the application of the Career Offender Guideline in his Motion to Vacate Sentence, the Court previously held that Petitioner is a Career Offender, and that decision was not disturbed by the Court of Appeals for the Third Circuit as it declined to issue a Certificate of Appealability ([Doc. 169](Doc. 169), [Doc. 182](Doc. 182)).  Therefore, his current argument about policy agreement with the Guidelines is only proper in the context of a Motion to Vacate Sentence, which would likely be considered a second or successive Motion to Vacate.  This is because Section

3582(c)(1)(A) "provides a mechanism to seek a reduction in a term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019).  To allow this argument to proceed would effectively bypass the requirement that Petitioner seek the permission of the United States Court of Appeals for the Third Circuit to file a second or successive Motion to Vacate under Section 2255.  See 28 U.S.C. § 2255(h).

Petitioner posits that the fact that others were convicted of causing the death of another person and received a lighter prison sentence than he has, results in a disparity.  Sentencing disparity is concerned "with national disparities within a class of similar defendants, not the disparities between one defendant and another." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).  Petitioner's invitation to consider his action and sentence against unrelated crimes and sentenced is not Section 3553 contemplated by considering the need to avoid sentencing disparity.  Instead, the Court is seeking to avoid sentencing disparities among those being sentenced after committing similar conduct and with similar backgrounds.  In any event, the Court is not convinced that this alleged sentencing disparity is a proper comparison, and in any event, it does not warrant a finding of an extraordinary and compelling reason to reduce Petitioner's sentence.

As for Petitioner's contention that the "onerous" conditions of the prison constitute an extraordinary and compelling condition for release, his argument fails on this basis as well.  He claims that lockdown conditions at the institution warrant compassionate release because they have rendered sentences harsher and more punitive than intended ([Doc. 184 at 30-31](Doc. 184 at 30-31)).  However, Petitioner fails to acknowledge that "[e]very prisoner in a BOP facility is currently subject to onerous conditions due to the COVID-19 pandemic and [] has not explained why he should be given special or unique treatment." *United States v. Colburn*, 2021 WL 257133, *2 (D. Mass.

Jan. 26, 2021). This Court takes judicial notice that FCI Hazelton is currently at a level 2 of 3 on modifications of operations, along with almost half of the other FCI's and FCI Hazelton currently has 3 staff members who tested positive for COVID-19 and no inmates. (https://www.bop.gov/coronavirus/, last accessed 10/17/2022).

Petitioner's argument that the Government informally offered him a plea agreement that would have subjected him to a much lower prison term, also constitutes an extraordinary and compelling basis for relief, is also unconvincing. The fact that Petitioner has what the Government has aptly termed "buyer's remorse," while unfortunate, does not constitute a basis for relief (Doc. 205). Otherwise, were this Court to countenance Petitioner's argument, the untenable result would be that any Defendant who received a higher sentence than an available plea agreement would have offered, would be entitled to relief.

Finally, after considering the Section 3553(a) factors and Petitioner's crime, the Court does not find a basis to support compassionate release at this time, as he has served well under half of the 327 months imprisonment, having been detained since 2017. Although the amount of heroin involved in the offense was not substantial, the current offense marks Petitioner's fifth felony drug offense and he was serving a term of supervised release at the time. Petitioner's criminal history, including his recidivism, the nature and circumstances of the offense; the need to instill a respect for the law; and the need for deterrence, support the sentence imposed at this time.

Simply stated, Defendant has failed to demonstrate that extraordinary and compelling circumstances exist in light of the law established by the Court of Appeals for the Third Circuit governing this issue. Petitioner has failed to demonstrate that extraordinary and compelling circumstances exist in light of the law established by the Court of Appeals for the Third Circuit

11

governing this issue.

For these reasons, the Court cannot agree that Petitioner is entitled to relief. Accordingly, his Motion for Compassionate Release pursuant to the First Step Act is DENIED (Doc. 184).

So Ordered, this 17th day of October, 2022.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All ECF Registered Counsel of Record

Maurice Frezzell
FCI Hazelton
Box 5000
Bruceton Mills, WV 26525