IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 17-0208 |
| | ELECTRONICALLY FILED |
| Plaintiff, | |
| v. | |
| MAURICE FREZZELL, | |
| Petitioner. | |

**Memorandum Order denying (Second) Motion for Compassionate Release** (Doc. 212)

### I.     Introduction

Currently pending before this Court is the (Second) Motion for Compassionate Release of Petitioner, Maurice Frezzell, pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 212) ("the First Step Act") with supplemental briefing (Doc. 217 and Doc. 218). The Government opposes Petitioner's instant Motion on the basis that it is without merit and some of the arguments have been unsuccessfully raised in his Petitioner's First Motion for Compassionate Release. (Doc. 205). After careful consideration, Petitioner's Motion will be DENIED.

### II.     Background

On August 8, 2017, Petitioner was charged by Indictment with one-count of Distribution and Possession with Intent to Distribute a Quantity of a Mixture and Substance and Mixture Containing a Detectable Amount of Heroin, in violation of Title 21 United States Code Sections 841(a)(1) and (b)(1)(C). Then, on October 25, 2017, the Government filed an Information to

1

establish a prior conviction for an enhanced penalty of up to 30 years imprisonment, and in support, the Government relied upon three (3) prior felony drug offenses. On December 4 through December 6, 2017, the jury trial of this matter occurred, and Petitioner was convicted on the sole count of the Indictment.  Petitioner was sentenced on June 12 and June 13, 2018, and after extensive testimony, the Court held that his offense level was a 34 and his criminal history category was VI, resulting in a sentencing guideline range of 262 to 327 months' imprisonment. The Court, however, ruled against the Government's requested offense level of 36, and carefully considered the parties arguments and stated that the Government could not get the benefit of convicting Petitioner of other crimes (resulting in a higher advisory guideline range) without sustaining its burden on those crimes at a trial. The Court also ruled Petitioner was a career offender, but importantly, he would have still been assigned a Criminal Category of VI, regardless of his career offender status.[1] The Court sentenced Petitioner to a 327-month term of

---

[1] The Court previously explained in its prior Memorandum Order on Petitioner's First Motion for Compassionate Release (Doc. 210) that Petitioner has a significant criminal history dating back to 1995.  Petitioner's first adult conviction was for unlawfully possessing a firearm in 2001 (Doc. 120 at ¶ 34). He received a sentence of six to eighteen months' imprisonment (Id.). Later that year, after fleeing from an officer who was trying to arrest him, Petitioner was convicted of disorderly conduct (Id. ¶ 34). He received a years' probation, but it was revoked and Petitioner spent almost a year incarcerated (Id.). In November 2002, Petitioner threatened the mother of his child and was convicted of disorderly conduct and harassment (PSR ¶¶ 37-38). After fleeing from a traffic stop in January 2003, he was convicted of resisting arrest and placed on probation for a year (Id. at ¶ 39). His probation was later revoked and he was sentenced to nine to twenty-three months imprisonment (Id.). Six months later, he was convicted for defiant trespass (Id. at ¶ 40). On June 20, 2003, Petitioner was arrested on an outstanding warrant and placed in the Monessen Police Department lock-up (Id. at ¶ 41). He attempted to destroy 6.2 grams of crack hidden on his person but the police stopped him (Id.). He was convicted of possession with intent to deliver and received six to twenty-three months imprisonment (Id.). Another felony delivery conviction occurred on January 23, 2004, after Petitioner sold 1.6 grams of crack to an undercover officer (Id.at ¶ 42). He was sentenced to six to twenty-three months imprisonment. In 2004, Petitioner pleaded guilty to another charge of possession of cocaine base and received a sentence of six to eighteen months (Id. at ¶ 36). He was paroled but violated the terms of his release and was reincarcerated (Id.).  On April 25, 2007, Petitioner sold 7.5 grams of crack to a confidential informant working for the Pennsylvania State Police (Id. at ¶ 46). This case was

imprisonment, followed by 6 years of supervised release. Doc. 142. Following an unsuccessful appeal challenging the veracity of an eyewitness, the United States Court of Appeals for the Third Circuit affirmed the judgment of conviction and sentence on October 31, 2019. *United States v. Frezzell,* 793 F. App'x 133 (3d Cir. 2019).  Doc. 152 and Doc. 153. On January 4, 2021, Petitioner filed a Motion for Compassionate Release, and afterwards, he filed a Motion to Vacate Sentence pursuant to Section 2255, on January 4, 2021 (Doc. 155, Doc. 159, and Doc. 160). Petitioner maintained, *inter alia*, that he was no longer a Career Offender under the Third Circuit's decision in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (Doc. 169 at 1). The Court denied the claim on its merits noting that Petitioner's state and federal convictions qualified as predicate felonies under the Career Offender guideline and reaffirmed its determination that he was a Career Offender (Id. at 8).

On October 18, 2021, Petitioner filed his Notice of Appeal before the Court of Appeals for the Third Circuit (Doc. 178).   On August 27, 2021, Petitioner filed a Motion to Reduce Sentence/for Compassionate Release under the First Step Act, which this Court denied because the matter was on appeal.  On December 14, 2021, the Court of Appeals affirmed this Court's Order on the Motion to Vacate (Doc. 187).

Petitioner previously filed his First Motion for Compassionate Relief and on October 11, 2022, the Court denied his Motion by Memorandum Order which is incorporated by reference into this Memorandum Order.  (Doc. 210).  In Petitioner's First Motion, he argued that the Career Offender guideline was flawed; that others who were convicted for engaging in conduct

---

prosecuted in federal court. Petitioner pleaded guilty to violating 21 U.S.C. § 841(a)(1) and was sentenced to 100 months imprisonment and five years' supervised release (Id.).  Supervised release commenced on February 27, 2015, and Petitioner violated its terms by committing the instant offense (Id.).

resulting in death received sentences lower than his, constituting a "disparity"; that the "onerous" conditions of his confinement warranted compassionate release; that the Government's prior alleged plea offer of 70 months imprisonment (which he allegedly declined) if he cooperated and 12 years imprisonment (if he did not) demonstrated that the sentence in this case was unfair; and finally, that a balance of the Section 3553(a) factors otherwise warranted relief.

In this Court's prior Memorandum Order denying his First Motion for Compassionate Release, the Court found that Petitioner failed to exhaust his administrative remedies. The Court also conducted a merits analysis and found his arguments were without merit. Finally, the Court considered the Section 3553(a) factors, and found that Petitioner had served well under half of the 327 months imprisonment, having been detained since 2017. The Court noted that the offense conduct revealed that the amount of heroin involved in the offense was not substantial, but that the current offense marks Petitioner's fifth felony drug offense, as he was serving a term of supervised release at the time. The Court found that Petitioner had failed to demonstrate that extraordinary and compelling circumstances exist in light of the law established by the Court of Appeals for the Third Circuit governing this issue. (Doc. 210).

### III.     Standard of Review

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the Petitioner after the Petitioner has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Petitioner's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Petitioner's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

> The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the Petitioner," *id*. § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the Petitioner," *id*. § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason," for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

(b) Extraordinary and Compelling Reasons.—Extraordinary and compelling

5

reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances

— (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) Family Circumstances of the Defendant.—

. . ..

(4) Victim of Abuse.—The defendant, while in custody serving the term of

imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions);
that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).**

U.S.S.G. § 1B1.13, cmt. n.1 (emphasis added).

Notably, the Court of Appeals for the Third Circuit held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

It is the Petitioner who bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a Petitioner may file a Section 3582(c)(1)(A) motion with the Court. As explained by the Court of Appeals for the Third Circuit in *United States v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the Petitioner may file the motion [for compassionate release

7

pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 812 Fed. App'x. at 107.

The First Step Act's amendment of 18 U.S.C. § 3582 ("Section 3582") provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (2) in any case—
>
> (B) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the Petitioner after the Petitioner has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Petitioner's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Petitioner's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

In order to obtain judicial relief, inmates are required to exhaust administrative remedies. *United States v. Raia,* 954 F.3d 594, 595 (3d Cir. 2020) (noting that Petitioners "must at least ask the Bureau of Prisons (BOP) to [file a motion] on their behalf and give BOP thirty days to respond."). One of the chief reasons "for requiring prisoners to exhaust their administrative remedies is to give the BOP the opportunity to address the issue[s]." *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 4, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To properly exhaust administrative remedies, "the administrative complainant must raise the same claims asserted in the federal court filing." *Id.* (citing *Garda-Lord v. Doe*, 736 F.

App'x 30, 32 (3d Cir. 2018) (prisoner failed to exhaust administrative remedies even though he filed numerous prison grievances because none addressed the subject of the federal complaint)). Petitioner bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A)(i). *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5747829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).[2]

## IV. Discussion

In Petitioner's Second Motion for Compassionate Release, he contends that the conditions at FCI Hazelton are unsafe, unsanitary and abusive and that this amounts to an extraordinary and compelling reason for his release. In a slight spin on his prior argument, Petitioner further contends that under recent policy statements issued by the United States Department of Justice ("DOJ"), the Court should reconsider whether his designation as a Career Offender was appropriate.[3] Petitioner next contends a sentencing disparity is present with another sentence imposed by this Court in *United States v. Johnson*, Criminal No. 20-207. Petitioner posits that "over-policing," within the City of Pittsburgh results in a disproportionate number of Black males being charged with felony offenses resulting in a disproportionate number of Black males being designated as Career Offenders.  Petitioner contends that each and all of these reasons constitute compelling and extraordinary grounds for release under 18 U.S.C. § 3582(c)(1)(A).

---

[2] The Court finds that Petitioner exhausted his administrative remedies (Doc. 211) at least with respect to his claims that are not more appropriate as a Habeas Petition, and the Government did not address this issue.

[3] Petitioner contends and the Court notes in his Reply Brief that he does not challenge that he is a Career Offender but that "these factors clearly warrant a reduction from the career offender sentence."  (Doc. 217).  The "factors" Petitioner cites above in his Reply Brief appear to be prison conditions and the length of his sentence being essentially a "life sentence."

As noted above, Petitioner previously challenged his designation as a Career Offender, and his challenge was rejected by this Court.  There is no valid reason to revisit that ruling, and as the Government contends, and this Court agrees, the law of the case doctrine precludes reconsideration thereof.

Petitioner also misunderstands Section 1B1.13(b)(5).  Subsection 1B1.13(b)(5) holds that extraordinary and compelling circumstances exist when "[t]he Petitioner presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

Pursuant to Section 1B1.13(b)(5), in order to meet the standard for "compelling and extraordinary," an inmate must either demonstrate that it is "similar in gravity" to the factors set forth at Section 1B1.13(b)(1)-(4).  Petitioner has failed to meet this standard and instead posits that his reasons for compassionate release are compelling and extraordinary under Section 1B1.13(b)(5). Petitioner's cited reasons, when considered independently are not compelling and extraordinary, and some are not cognizable under Section 3582(c)(1)(A).

It is a difficult burden to meet, and unfortunately for Petitioner, his allegations do not rise to the level of a truly grave condition, which is similar in gravity to conditions such as terminal cancer and serious bodily injury committed by the BOP staff. *United States v. Carter*, --- F.Supp.3d---, 2024 WL 136777, at *9 (E.D. Pa. Jan. 12, 2024); *United States v. Feliz*, 2023 WL 8275897, at *6 (S.D.N.Y. Nov. 30, 2023) (harsh prison conditions not similar in gravity to reasons listed at § 1B1.13(b)(1)-(4)).

Petitioner also raises concerns about the conditions of his confinement, stating that his First Amendment Rights have been hampered, that minorities are harassed by the "Good Ol'

10

Boys" (members of the prison staff), and that the prison is understaffed, but those claims are properly raised in the form of habeas relief following proper exhaustion of administrative remedies. Moreover, Petitioner's allegations are generalized and do not evidence that anything he raises is applicable to him specifically, or that a serious consequence, real harm or damage to him will result.

Additionally, his citation to post-sentencing changes in DOJ policy is unconvincing. On December 16, 2022, Attorney General Garland issued a memorandum entitled: "Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases." (Doc. 212-1 at 26-30). According to the Memorandum, prosecutors should "consider supporting a downward variance to the guidelines range that would apply in the absence of Career Offender status," for drug offenders whose designation as a Career Offender "is predicated on the current and previous commission of nonviolent controlled substance offenses." (Id. at 28-29). [4]

Petitioner's reliance on the Attorney General's guidance is overstated. The memorandum itself directs that "[t]he policies contained in this memorandum, and internal office procedures adopted pursuant thereto, are intended solely for guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." (Doc. 212-1 at 30 n.4) (citations omitted). Moreover, under *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), a post-sentence change in the law or policy cannot serve as a basis for compassionate release.

---

[4] In Petitioner's latest reply brief, the Court surmises (because his writing is difficult to read) that he cites to *Erlinger v. United States*, No. 23-370, (June 21, 2024), which relates to the Armed Career Criminal Act and determines that the Fifth and Sixth Amendment to the United States Constitution compels that a unanimous jury must determine whether the predicate acts were committed on separate occasions, which is distinct from the Career Offender designation here.

Petitioner next presents the case of *United States v. Johnson*, Criminal No. 20-207, a case decided by this Court, which he alleges is proof of a sentencing disparity. However, Petitioner does not address the significant differences between his case and Johnson. Specifically, Johnson involved a guilty plea pursuant to a Rule 11(c)(1)(C) plea agreement, where he agreed to a 144-month sentence in exchange for numerous rights which he relinquished, while this case went to trial after a plea agreement was rejected by this Petitioner, and Petitioner was ultimately found guilty. Petitioner here was also offered a plea agreement, which he rejected, which is his right to do but it does not constitute a basis for relief. Otherwise, were this Court to countenance Petitioner's argument, the untenable result would be that any Defendant who received a higher sentence than an available plea agreement would have offered, would be entitled to relief.

Finally, Petitioner's claim that the Pittsburgh Police engage in "over policing" resulting in a disparate impact is unconvincing because, while Petitioner has an extensive criminal record, he was never arrested or prosecuted in Allegheny County. And, to the extent he relies upon statistics from 2020, as the Government emphasizes, Petitioner was convicted in 2017 and sentenced in 2018.

The Court previously considered the Section 3553(a) factors approximately 18 months ago, in the context of Petitioner's First Motion for Compassionate Release, and found that Petitioner was not entitled to Compassionate Release at that time, having served well under half of his sentence. The Court incorporates by reference its prior Memorandum Order thereon, and still finds that nothing in the 3553(a) compels this Court to release Petitioner at this juncture. (Doc. 210).

For these reasons, the Court cannot agree that Petitioner is entitled to relief. Accordingly, his Second Motion for Compassionate Release is DENIED (Doc. 212).

SO ORDERED, this 8th day of July, 2024.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All ECF Registered Counsel of Record

Maurice Frezzell
FCI Hazelton
Box 5000
Bruceton Mills, WV 26525